# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:25CR204 |
| | : | |
| Plaintiff, | : | |
| | : | JUDGE BENITA Y. PEARSON |
| -vs- | : | |
| | : | |
| DEREK BRANTLEY, et al., | : | |
| | : | **DEREK BRANTLEY'S** |
| Defendants. | : | **SENTENCING MEMORANDUM** |

Derek Brantley, through counsel, submits the following memorandum in advance of his

Sentencing Hearing. A sentence of 84 months is sufficient but not greater than necessary to

achieve the goals of sentencing in 18 U.S.C. § 3553(a).

Respectfully submitted,

STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar: 0051928

/s/David E. Johnson
DAVID E. JOHNSON
Assistant Federal Public Defender
Ohio Bar: 0081505
1660 West Second Street, Suite 750
Cleveland, Ohio 44113
(216) 522-4856 Fax: (216) 522-4321
e-mail address: David_Johnson@fd.org

**MEMORANDUM**

## I. Introduction

Mr. Brantley requests the Court to sentence him to **84 months** of imprisonment, the low end of the non-career-offender range. A sentence longer than that would be greater than necessary to comply with Section 3553(a).

First, for the purposes of preservation, Mr. Brantley argues that the career offender enhancement does not apply because neither of his two prior Ohio convictions for distributing marijuana can be classified as a "controlled substance offense" under § 4B1.2. He argues the correct guideline range is 84 to 105 months, incorporating herein the arguments found on pages 39-40 of the July 7, 2026 PSR, thereby objecting to PSR paragraphs 49, 69 and 106. Specifically, Mr. Brantley argues that § 4B1.2's definition takes a "time-of-sentencing approach," asking whether the substances that could have supported his 2009 marijuana state offense would fall within the federal drug schedules as they exist now, when this Court sentences him. Subsequent to Mr. Brantley's 2009 convictions, Congress amended its drug schedule to include a marijuana purity requirement, *i.e.* excluding hemp. *See* 21 U.S.C. § 802(16)(B) (referring to 7 U.S.C. § 1639o(1)). The Ohio legislature did so as well. *See* Ohio Rev. Code § 3719.01(M) (referring to O.R.C. § 928.01). Mr. Brantley thus asserts that his 2009 offenses included conduct that is broader than, and thus does not meet, § 4B1.2's definition of "controlled substance offense." However, there is a circuit split on this issue, with the Sixth Circuit disagreeing with Mr. Brantley's argument. *See United States v. Clark*, 46 F.4th 404 (6th Cir. 2022). He preserves the issue for further review, submitting that the correct guideline range in this case is 84 to 105 months.

Second, regardless of the correct guideline range, a sentence of 84 months, at the bottom of the non-career-offender range, would best comply with Section 3553(a). While Mr. Brantley

2

qualifies for the career offender enhancement under current Sixth Circuit precedent, the Sentencing Commission itself recognizes that he is not the type of defendant where the recidivist enhancement is necessary to comply with Section 3553(a). Sentencing Mr. Brantley within the career offender guideline would be significantly greater than necessary due to his predicate offenses and the gross disparities in sentencing for his type of predicate offenses. Additionally, Mr. Brantley's role in the offense, his years of success after his release from prior incarceration, and his recent progress towards addressing his drug addiction, all support an 84-month sentence.

## II. A sentence within the career offender range in Mr. Brantley's case would be unjust and significantly greater than necessary to comply with Section 3553(a).

Imposing a sentence within the career offender range would be far greater than necessary based on the particular facts surrounding Mr. Brantley's predicates, the data reflecting that a lengthy sentence is not necessary to deter drug trafficking only offenders, and the fact that most similarly situated defendants receive a sentence below the career offender range. Based on these factors, Mr. Brantley requests this Court sentence him within the non-career offender guideline range. The statutory sentencing factors support a sentence of 84 months, the low-end of the non-career-offender range.

### A. Mr. Brantley's situation qualifying him as a career offender is highly unusual.

Mr. Brantley has no prior convictions for crimes of violence. Mr. Brantley's career offender predicates are two marijuana trafficking offenses that the Sixth Circuit qualifies as controlled substance offenses. PSR ¶¶ 62, 63. But the circumstances of the prior convictions are unique. He committed these offenses within one month of one another, almost 17 years ago, in August and September of 2009, when he was just twenty-five years old. *Id.* Furthermore, Mr.

3

Brantley was sentenced for both cases on the same day, and he served both sentences concurrently. Despite serving one continuous prison sentence for both offenses, the Guidelines count them separately. Although Mr. Brantley technically qualifies as a career offender under current precedent, his particular circumstances are far from typical. Imposing a sentence within the career offender range does not serve the intended purpose of that enhancement, which is to punish those who do not reform themselves after serving a prison sentence.

Mr. Brantley's non-career-offender guideline range is 84 to 105 months, with a total offense level of 25 and a Criminal History Category is IV. PSR ¶¶ 41, 42, 47-48, 68.[1] Applying the career offender enhancement, Mr. Brantley's guideline range skyrockets to 188 to 235 months. *See* PSR ¶ 106. Along with the higher offense level, his criminal history category jumps to Category VI. PSR ¶ 69. All told, the career offender enhancement more than doubles his guideline range.

Mr. Brantley requests this Court sentence below the career offender range because such a sentence is unnecessarily punitive, especially here, in these unique circumstances. Specifically, the enhancement here is based on: (i) two prior drug trafficking convictions, (ii) that occurred nearly two decades ago, (iii) which were committed less than a month apart from each other, (iv) the sentences for which were imposed on the same day and served concurrently, and (v) occurred when Mr. Brantley was 25 years old. These are unique circumstances that should cause this Court

---

[1] The PSR includes a higher base offense level than in the plea agreement because the probation department converted the cash found in the search to drug weight. PSR ¶ 34, 41. Mr. Brantley does not object, but notes for the Court that it is inconsistent with the negotiated plea agreement. Using the guidelines agreed to by the parties in the plea agreement, Mr. Brantley's non-career-offender Guideline range is 70 to 87 months.

to sentence below the career offender range to the non-career-offender range. The particular facts surrounding Mr. Brantley's predicates are not indicative of the typical defendant intended to be punished by the harsh recidivist enhancement.

**B. Because the two predicate offenses are drug trafficking offenses, sentencing within the career offender range creates unwarranted sentencing disparities, is unnecessary for deterrence, and is no more likely to protect the public than a non-career-offender sentence.**

Not only is a sentence within the career offender range in Mr. Brantley's unique case problematic because of the age and unique circumstance of his prior marijuana convictions, but it would also cause unwarranted sentencing disparities, be greater than necessary to provide deterrence, and be unlikely to reduce recidivism. 18 U.S.C. § 3553(a)(2)(B), (a)(2)(C), (a)(6). The Sentencing Commission itself has published research and reports to support such conclusions.

In August 2016, the Sentencing Commission wrote a report in an attempt "to explore concerns that the career offender directive fails to meaningfully distinguish among career offenders with different types of criminal records and has resulted in overly severe penalties for some offenders." U.S.S.C., Report to the Congress: Career Offender Sentencing Enhancements, at 2 (August 2016).[2] The Commission undertook a multi-year study and made four key findings directly applicable to Mr. Brantley's case, as explained below.

---

[2] Available at https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/criminal-history/201607_RtC-Career-Offenders.pdf (last accessed 7/14/26).

First, the Commission found that, overall, career offenders who had only drug trafficking predicate offenses, like Mr. Brantley, were impacted more significantly than career offenders who had violent or mixed predicate offenses, largely because the maximum penalties for drug offenses are so high. *Id.* at 31. Furthermore, the Commission found that Drug Trafficking Only Offenders (hereinafter DTOOs), like Mr. Brantley, were less likely to fall into Criminal History Category VI, absent the career offender designation, compared to those with violent offense predicates. *Id.* at 32. Only half of DTOOs would have already been in Category VI absent the enhancement, as shown in the table below. *Id.* at 30.



Mr. Brantley's placement in Category VI is only because of the career offender enhancement, as he would otherwise be Category IV. Thus, sentencing under the career offender designation overly inflates his criminal history category and widens the discrepancy in sentencing career offenders whose conduct truly warrant placement in Criminal History Category VI.

Second, the Commission found that judges routinely sentenced below the career offender enhanced guideline for DTOOs. Specifically, DTOOs "were ultimately sentenced least severely and with the great extent of departure or variance." *Id.* at 34, Figure 13. Across the board, the Commission explained that the average sentence in the cases involving DTOOs was "**nearly**

**identical to the average guideline minimum . . . before application of the career offender guideline**.” *Id.* at 35 (emphasis added).  In other words, the average sentence imposed on DTOOs (like Mr. Brantley) was nearly identical to the average bottom of the non-career-offender guideline. Given these downward variances, the Commission wrote that the data may suggest that “courts, and increasingly the government, view the career offender enhancement as overly severe for this group of career offenders, and that, instead, a sentence that is consistent with other non-career offender drug trafficking offenders is more appropriate.” *Id.*

As applied here, sentencing Mr. Brantley to the higher, doubling career-offender guideline range would cause unwarranted sentencing disparities. It would wildly differ from the average sentence that a similarly situated defendant would expect to receive when looking at the JSIN data. During the past five years, the defendants who were at the same total offense level of 25 and Criminal History Category of IV had an average length of imprisonment at 74 months, and a median length of imprisonment at 76 months. PSR ¶ 133. Mr. Brantley’s request for an 84-month sentence is slightly higher than those averages. Thus, sentencing Mr. Brantley to 84 months avoids unwarranted disparities for similarly situated defendants.

Third, the Commission found that DTOOs were less likely to recidivate than career offenders with prior convictions for crimes of violence, and not significantly more likely to reoffend than non-career offenders, as shown in the following table. *Id.*, at 40.



Figure 19.

Projection of Time to First Rearrest by Career Offender Pathway

When looking at the rate of rearrest during an eight-year follow-up period, drug trafficking only offenders recidivate at a rate that is more similar to non-career offenders than career offenders in the mixed or violent only categories.

Thus, sentencing a DTOO (like Mr. Brantley) at the career offender range is not necessary to serve as a deterrent, since the individual is not significantly more likely to reoffend than an individual sentenced at the non-career-offender guideline. In Mr. Brantley's case, a sentence in the career offender range would be greater than necessary for purposes of deterrence because his risk of recidivating is no different than if the Court imposed the requested 84-months. The data indicate that a career offender sentence is no more likely to protect the public or further other relevant Section 3553(a) purposes.

Fourth, the Commission found that while older offenders are already at a lower risk of recidivism, DTOOs are also at a lower risk of recidivism despite being the youngest category of career offenders. *Id.* at 41. This finding was contrary to the expectation that DTOOs would be more likely to offend because they are typically younger. The data indicate that the type of

8

predicate offense matters more than the age of the individual when it comes to likelihood of recidivism.



Here, the facts are even more supportive of a sentence within the non-career-offender range, as Mr. Brantley approaches both categories that indicate a lower risk of recidivism.  One, because he is a DTOO, with two prior marijuana trafficking convictions, he is less likely to recidivate than other types of career offenders. Two, because he will be nearly 50 years old at the time of his release, he again has a reduced recidivism risk. As the Sentencing Commission explained in another report, the rearrest rate for those released from federal custody was highest among offenders 24 years old and younger, and declined as age increased.[3]

Importantly, the Commission made the <u>following summary</u>: "**In light of these findings, the Commission concludes that drug trafficking only career offenders [DTOOs] are not meaningfully different than other federal drug trafficking offenders and therefore do not categorically warrant the significant increases in penalties provided for under the career**

---

[3]  U.S.S.C., *The Effects of Aging on recidivism Among Federal Offenders* at 22 (2017), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf#page=9 (last accessed 7/14/26).

**offender guideline.**" *Id.* at 27 (emphasis added). Thus, the Commission concluded that the career offender enhancement may not be justified in DTOO cases.

Applied here, this Court should accept the Commission's conclusion and find that a sentence within the career offender range is significantly greater than necessary in Mr. Brantley's case. Mr. Brantley's history is not meaningfully aggravated from any other person charged with a federal drug trafficking crime. Mr. Brantley was released from prison on his prior convictions approximately 10 years ago and successfully completed his post-release control almost 6 years ago. There is nothing particular about his predicate offenses that would indicate he is more likely to reoffend, or that he is more deserving of a sentence closer to the statutory maximum penalties, which the career offender enhancement is intended to capture.

### C.  The career offender enhancement generally creates unwarranted sentencing disparities and is continuing to be studied for possible change in the future.

The U.S. Sentencing Commission is continuing to study the impact the career offender enhancement has in disparities in sentencing.  In June 2025, the Commission identified as one of its policy priorities for the amendment cycle ending May 1, 2026 the "[c]ontinued examination of the career offender guidelines," including "updating the data analyses set forth in the Commission's 2016 report to Congress, titled *Career Offender Sentencing* Enhancements" (discussed *supra*) and "possible consideration of amendments that might be appropriate." U.S.S.C., "Notice of Final Priorities," (90 FR 39263) (Aug. 14, 2025). While amendments to limit the applicability of the enhancement were not submitted to Congress during the current amendment cycle, the data supporting the proposal are insightful to this case.

The general trend over the ten fiscal years from 2013 to 2022 shows that in cases where career offender's § 4B1.1 was applied, more defendants are being sentenced below the career

offender ranges regardless of what type of career offender they are. U.S.S.C., *Individuals Sentenced Under § 4B1.1 Data Background* (2025).[4] As the slide below shows, that proportion has increased from 44.1% in FY2013 to 62.1% in FY2022. *Id.* While some defendants are still sentenced within the career offender range, that proportion is trending downward. *Id.* In 2022, only 20.1% of individuals classified as Guideline career offenders received a within-Guideline sentence. Mr. Brantley should not be among that group.



The trends show a widening gulf between sentences imposed and sentences recommended by the career offender guideline. *Id.* A solid majority of defendants are sentenced below the range recommended by the career offender guideline. *Id.* Vanishingly few are sentenced above this range. *Id.* This suggests that most courts view career offender sentences as greater than necessary.

---

[4] *Available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/data-briefings/2025_Career-Offender.pdf (last accessed 7/14/26).

This Court should consider the data of downward variances practiced around the nation. *See* 18 U.S.C. § 3553(a)(6). Rather than sentencing Mr. Brantley within the career offender range, a sentence within the non-career offender range would avoid unwarranted sentencing disparities.

### IV.  The statutory sentencing factors support a sentence of 84 months.

After weighing all the § 3553(a) factors, a sentence of 84 months is sufficient to provide just punishment, protect the public, and promote respect for the law. Mr. Brantley's conduct in this conspiracy followed a significant amount of time of stability and was limited to his involvement with one co-Defendant. Mr. Brantley made the poor decision to reengage in the drug trade because he thought it would be a quick solution to his financial problems. His decision was clouded by his drug addiction and financial stress. Now sober, Mr. Brantley understands he made a terrible decision and his conduct has consequences. He is, however, unlikely to recidivate in the future given that he will be approaching 50 years old upon release, his strong motivation to remain in the community to help care for his family, and his desire to remain sober. Given all the circumstances, Mr. Brantley requests this Court impose a sentence of 84-months.

### A.  Mr. Brantley's conduct in this case does not warrant a sentence greater than 84 months.

The nature and circumstances of the instant offense support a sentence of 84 months. Mr. Brantley pled to multiple counts of drug trafficking as part of a drug conspiracy. PSR, page 1. While these crimes are serious and Mr. Brantley accepts full responsibility for his conduct, his conduct was limited to Mr. Brantley selling drugs to one person, Juan Colon. His four counts of distribution were based on four sales of drugs Mr. Brantly made to Colon, whom Mr. Brantley has known since they were teenagers. Additionally, Colon was the only connection Mr. Brantley had to the drug conspiracy. He did not sell drugs to any other person and had no knowledge of the

other individuals in the conspiracy. Mr. Brantley acknowledges that this involvement does not absolve his conduct, but the scope of his involvement in the conspiracy is something for the Court to consider when fashioning an appropriate sentence.

### B. Mr. Brantley's history, his demonstrated ability to be a law-abiding citizen, and his efforts toward addressing his drug addiction, support the requested sentence.

Mr. Brantley was born in Spain to parents who served in the United States Military. *See* PSR ¶ 80; Ex. A, Letter from Parents.  Although he was born abroad, he is a United States citizen.[5] As a military family, Mr. Brantley and his family moved often. PSR ¶ 81. While his parents were able to provide the necessities for him, the family was low income and often lived in dangerous neighborhoods. Mr. Brantley remembers living in apartments where people were murdered, there was drug activity, deaths, and fights. These traumatic experiences left an imprint on Mr. Brantley. Mr. Brantley began abusing alcohol and marijuana at age 11, and ecstasy at age 16. Mr. Brantley's drug use culminated in him trafficking in drugs. In his early-to-mid-twenties, he was convicted of drug trafficking offenses during which he sold marijuana. PSR ¶¶ 59, 61-63. His first felony drug trafficking convictions occurred in late-2009, when he was 25 years old. PSR ¶¶ 62, 63. Specifically, the first time Mr. Brantley was sentenced for a drug offense punishable by more than one year was in December 2009. *Ibid*. It is those convictions that the PSR uses to classify Mr. Brantley as a career offender. He was released from prison in September 2017. *Id*.

---

[5] An FS-545 form (a certification of report of birth abroad), which Mr. Brantley provided to the PSR author, PSR at ¶ 80, is proof of US Citizenship. *See* Dep't of State, 8 FAM 303.3, https://fam.state.gov/fam/08fam/08fam030303.html (last accessed 7/14/26).

After his release, Mr. Brantley worked to reintegrate into society and provide for himself and his family. After his time in custody, he went to school to be an electrician and started his own construction company. PSR ¶¶ 97, 98. When asked about the kind of work he did, he explained he did "almost everything" – including plumbing, framing work, drywall, cabinets, painting, flooring, carpeting, among others. He was working hard and was building a good life for himself.

In September 2020, three years after his release, he successfully completed his state post-release control. The world was in the midst of a global pandemic. In 2021, his construction company struggled and Mr. Brantley's bills began to pile up. When asked about why his business started struggling, he answered: "There wasn't any money." He first had to borrow money to pay the workers and then it became hard just to get a contract. Mr. Brantley picked up other odd jobs to try to pay the bills. He cooked and sold food and worked as an unarmed security guard. Mr. Brantley began abusing drugs again to stay awake longer in order to keep up with his work obligations and as a way to cope with life's stressors. He was using (what he thought were) ecstasy pills (which lab tests showed to be methamphetamine); in 2021 or 2022, he began using (what he thought were) Percocet pills (which lab tests showed to be fentanyl). He was addicted to both. Despite his efforts, hard work and attempt to build a stable life for himself and his family, the bills kept mounting. Even when he did have work, "By the time I got the check, I had to pay people back," he explained.

Mr. Brantley found himself in a massive amount of debt. PSR ¶¶ 38, 101. In an attempt to pay his debts and to keep up with his drug addiction, Mr. Brantley made the poor decision to turn to drug trafficking. At the time, he thought it made sense and would be a quick fix to his financial problems. Now sober and clear-headed, Mr. Brantley realizes he "wasn't thinking at all" and that this was the "dumbest thing [he] could have done." PSR ¶ 38.

14

Mr. Brantley asks this Court to consider his substantially law-abiding behavior after his last release from imprisonment in 2017. He was successfully terminated from post-release control in 2020, after completing his term of supervision.

Additionally, the circumstances in this case suggest that law enforcement did not believe Mr. Brantley posed a significant risk to the community even after the searches of residences associated with him and the recovery of controlled substances. Despite the lengthy investigation into the drug conspiracy and the recovery of the controlled substances, Mr. Brantley was not arrested after the searches. Mr. Brantley remained in the community for approximately six months after the searches, during which time he remained law-abiding and stayed out of trouble. The lengthy time Mr. Brantley has been in the community without any unlawful conduct demonstrates his capacity to be lawful and successful.

Still further, during the past year of pretrial detention at Northeast Ohio Correctional Center (NEOCC), Mr. Brantley has been staying out of trouble and working on his sobriety. Mr. Brantley struggles with an addiction and was abusing pills daily prior to his arrest. PSR ¶ 95. Despite access to illicit drugs in the jail, he has remained committed to his sobriety. Further, he is interested in participating in the Residential Drug Abuse Treatment Program (RDAP) while in the Bureau of Prisons to help him with long-term tools to address his addiction. He requests this Court recommend that he participate in the RDAP program.

Mr. Brantley has also been focused on avoiding any negative influences or interactions with others in NEOCC. Despite well-documented recurring violence at the facility,[6] he has taken efforts

---

[6] Recurring violence at NEOCC is well-documented, with 21 stabbings occurring in the past two years. Drug smuggling has also been documented. *See Inmate stabbed, punched, during Saturday fight at NEOCC*, WKBN News, available at: https://www.wkbn.com/news/local-news/youngstown-news/inmate-stabbed-punched-during-saturday-fight-at-neocc/ (last

to avoid conflict and has remained compliant with all of the rules. PSR ¶ 6 (noting that he had no disciplinary issues).

Mr. Brantley's history, demonstrated ability to comply with the law, and his desire to address his drug addiction, support a sentence at the low end of the non-career offender guideline range.

### C. Mr. Brantley is supported by strong family bonds and is motivated not to reoffend now that he sees the real harm that he has caused his family.

During the past decade, Mr. Brantley has worked hard to maintain his relationships with his family members. He has three children, an eighteen-year-old daughter, a seventeen-year-old son, and a seven-year-old son. PSR ¶ 83. In addition to spending time with his children and providing child support, he helped care for his girlfriend, Ms. Byrd's, two children, and his ex's child when she was growing up. PSR ¶ 84. Mr. Brantley is also close with his parents. *See* Ex. A, Letter from Parents. Mr. Brantley recognizes the real harm he has caused the members of his family by his poor decisions. This reality check has given him strong motivation to never recidivate.

Mr. Brantley's parents, both disabled veterans, will have to care for themselves and two of Mr. Brantley's children while he is in custody. Mr. Brantley is devastated that he did not stop to consider the harm he has caused his family before he engaged in the offense. Face-to-face with that reality now, Mr. Brantley is not likely to reoffend in the future. Mr. Brantley, now 42 years old, realizes life does not pause when he is incarcerated and the years are passing him by. As an example, his father had a stroke last year after Mr. Brantley went into custody and he cannot take

---

accessed 7/14/26); *see also Prison Workers Smuggle Drugs Into Ohio Facilities But Are Rarely Prosecuted*, The Marshall Project, available at: https://www.themarshallproject.org/2026/03/29/ohio-prisons-drugs-prosecution-smuggle (last accessed 7/14/26).

his father's life for granted anymore. Losing the opportunity to see his family members for the last time has become Mr. Brantley's motivation to rebuild a law-abiding life.

Mr. Brantley is redeemable and, as detailed above, has proven he can comply with the law. His parents have noticed growth in him and in his desire to be more present with his family. Ex. A. Mr. Brantley's sister is also supportive of him and has documented his increased dedication to his family over recent years. Ex. B, Letter from Sister. Finally, Mr. Brantley's children have witnessed his growth, and want him to remain in their lives. Mr. Brantley has raised his children well, helping support them so they can be successful. Mr. Brantley's elder son writes, "I've seen my dad trying to do better and become more involved in my life. He talks to me about making good choices, learning from mistakes, and taking accountability, and those conversations have stayed with me." Ex. C, Letter from Elder Son. Mr. Brantley's son will be graduating high school next year and going to college. Mr. Brantley's daughter is beginning college this Fall, planning to study psychology and civil rights. Ex. A. Mr. Brantley is very involved in his youngest son's life, as he shares custody over him with his son's mother. Ex. D, Letter from Younger Son.

Mr. Brantley understands his poor decision comes with consequences, and he accepts them. He is focused on improving himself as quickly as possible so that he can return to his family and actualize what is important—being present for his family and returning to being a productive member of society. Mr. Brantley regrets abusing drugs and returning to drug trafficking thinking it would solve his financial problems. He acknowledges that he failed to think about his family and his responsibilities to them. Mr. Brantley now understands the long-term harm of his actions: that he sacrificed the ability to be with his family and cannot provide the needed support for them while he is incarcerated.

17

He wants to do better. Mr. Brantley is incentivized to rehabilitate himself while in custody and maintain compliance in the future. Thus, his family, by supporting him and incentivizing him to follow the law, serve to mitigate Mr. Brantley's risk of recidivism.

### D. Mr. Brantley suffers from health issues that negatively affect his life and will make his prison sentence a severe punishment.

Lastly, Mr. Brantley suffers from multiple health issues that have affected his life and make his service of an imprisonment sentence much more severe. He has a gunshot wound from 2003 that causes him recurring pain in his stomach, and he is overweight. PSR ¶ 88-90. Records demonstrate that he is prescribed a medication for high blood pressure. PSR ¶ 88. He explained how he has been diagnosed with psoriasis, pre-diabetes, and he often runs out of breath due to his weight. PSR ¶ 88. While sleeping, he cannot breathe adequately, and there is consideration of putting him on a CPAP machine. *Id.*

Most recently, Mr. Brantley was hospitalized at the end of April 2026 due to chest and back pain, and extremely high blood pressure – symptoms that looked like a heart attack. PSR ¶ 89. He was released with additional medication for high blood pressure. Because Mr. Brantley will have little control over the food he eats while incarcerated, his health issues may worsen when he is in the Bureau of Prisons, which has often failed to provide sufficient healthcare.[7] Because of his health issues, an 84-month or 7-year sentence will be a severe punishment. Mr. Brantley requests this Court recommend placement at a BOP Medical Facility.

### V. Conclusion

---

[7] *See Bureau Of Prisons Continues To Have Issues With Medical Care: OIG*, Forbes, Jan. 14, 2026, available at: https://www.forbes.com/sites/walterpavlo/2026/01/14/bureau-of-prisons-continues-to-have-issues-with-medical-care-oig/, (last accessed 7/14/26).

A sentence of **84-months**, at the bottom of the non-career offender guideline range, would be sufficient to provide just punishment, deter, promote respect for the law, and protect the community. Conversely, a sentence within the Guideline career offender range would be significantly greater than necessary to comply with Section 3553(a) and, in fact, would create unwarranted disparities.

The unique circumstances of Mr. Brantley's two prior career offender predicate convictions support the conclusion that a sentence below the career offender range should be imposed. Further, the Sentencing Commission's extensive study and analysis of the career offender enhancement also suggests that a sentence within the career offender range is not needed to comply with Section 3553(a).  Instead, a sentence at the bottom of the non-career offender range would be sufficient. The nature and circumstances of this offense and Mr. Brantley's history and characteristics support a sentence at the bottom of the non-career offender range. Mr. Brantley, now 42 years old, is unlikely to reoffend after his release from prison. He is older now and has seen the real harm he has done to his family by his poor decisions. Mr. Brantley's is his strong motivation to remain sober and to make good choices going forward.

Finally, Mr. Brantley requests that this Court recommend his participation in RDAP and placement in a BOP medical facility.

Based on these reasons, Mr. Brantley requests this Court sentence him to a term of 84 months, a sentence "sufficient but not greater than necessary" under 18 U.S.C. § 3553(a).

Respectfully submitted,

STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar: 0051928

*/s/David E. Johnson*

19

DAVID E. JOHNSON
Assistant Federal Public Defender
Ohio Bar: 0081505
1660 West Second Street, Suite 750
Cleveland, Ohio 44113
(216) 522-4856 Fax: (216) 522-4321
e-mail address: David_Johnson@fd.org